**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**In re:**

**FUNDAMENTAL LONG TERM CARE, INC.,** **Case No. 8:11-bk-22258-MGW**

**Debtor.**
**_________________________________________/**

**BETH ANN SCHARRER,**
**Chapter 7 Trustee;**

**Plaintiff,**

**v.** **Adv. No. ________________**

**CHRISTINE ZACK;**
**FUNDAMENTAL LONG TERM CARE HOLDINGS, LLC; and**
**FUNDAMENTAL ADMINISTRATIVE SERVICES, LLC;**

**Defendants.**
**_________________________________________/**

**COMPLAINT FOR TEMPORARY AND PERMANENT INJUNCTIVE RELIEF**

Plaintiff, Beth Ann Scharrer, as Chapter 7 Trustee of the Bankruptcy Estate of Fundamental Long Term Care, Inc. (the "Trustee"), pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure and Rules 4.05 and 4.06 of the Local Rules of the United States District Court for the Middle District of Florida, sues the Defendants, Christine Zack ("Zack"), Fundamental Long Term Care Holdings, LLC ("FLTCH"), and Fundamental Administrative Services, LLC ("FAS"), and alleges as follows:

**NATURE OF ACTION**

1. This adversary proceeding is brought pursuant to 11 U.S.C. §§ 105(a) and 541(a), as well as pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure and Rules 4.05 and 4.06 of the Local Rules of the United States District Court for the Middle District of Florida, to enjoin Zack from prosecuting a lawsuit against the Trustee's court-authorized counsel in an action now pending in the United States District Court for the Southern District of Ohio and to enjoin FLTCH and FAS from prosecuting a lawsuit against Trans Health Management, Inc. ("THMI"), the Debtor's wholly owned subsidiary, in an action now pending in the United States District Court for the Southern District of New York, both actions having been filed without this Court's knowledge or approval in an effort to collaterally attack decisions of this Court and to forum shop matters and proceedings being prosecuted in this Court

**PARTIES, JURISDICTION, AND VENUE**

2. The Trustee is the duly appointed Chapter 7 Trustee in this case and has standing to pursue all claims and causes of action belonging to the Debtor as well as its wholly owned subsidiary, THMI, as determined in light of this Court's Order and Memorandum Opinion on Trustee's Motions for Show-Cause Orders entered on October 9. 2012 (Bankr. Doc. 409) (the "Show Cause Opinion") as well as has been articulated in subsequent hearings for which Orders have not yet been entered.

3. The Debtor is a Delaware corporation that, along with all of its assets, including all claims and causes of action belonging to the Debtor, are subject to the

exclusive jurisdiction of the Bankruptcy Court pursuant to 28 U.S.C. §§ 1334(e) and 11 U.S.C. § 541.

4. THMI is a Delaware corporation that, as the wholly-owned subsidiary of the Debtor, constitutes property of the Debtor's estate subject to the exclusive jurisdiction of the Bankruptcy Court pursuant to 28 U.S.C. §§ 1334(e) and 11 U.S.C. § 541.

5. Zack is a resident of the state of Nevada.

6. FLTCH is a Delaware limited liability company with its principal place of business in Sparks, Maryland.

7. FAS is a Delaware limited liability company with its principal place of business in Sparks, Maryland.

8. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334(b).

9. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

10. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

11. All conditions precedent to bringing this action have occurred or been waived.

## GENERAL ALLEGATIONS

### *The Bankruptcy Case*

12. On December 5, 2011 ("Petition Date"), the Estate of Juanita Amelia Jackson ("Jackson Estate") filed an involuntary petition against FLTCI for relief under Chapter 7 of Title 11 of the United States Code in the United States Bankruptcy Court for the Middle District of Florida ("Bankruptcy Court").

13. On January 12, 2012, the Bankruptcy Court entered an Order for Relief as a result of FLTCI's failure to file a motion or responsive pleading as required by Rule 1011 of the Federal Rules of Bankruptcy Procedure.

14. Thereafter, Plaintiff, Beth Ann Scharrer, was appointed as Chapter 7 Trustee.

15. On June 5, 2012, this Court entered its Order Approving Application for Authorization to Employ Special Counsel Pursuant to 11 U.S.C. §327(a) (Bankr. Doc. 165), authorizing the Trustee to employ Shumaker, Loop & Kendrick, LLP ("Shumaker") as special counsel to the Trustee.

***Trustee's Work to Date***

16. Included among the duties of the Trustee pursuant to her statutory mandate directed by 11 U.S.C. 704(a), she must: "(1) collect and reduce to money the property of the estate … [and] (4) investigate the financial affairs of the debtor."

17. Accordingly, the Trustee embarked upon an effort to conduct an effective Meeting of Creditors, obtain meaningful Schedules and a Statement of Financial Affairs, obtain books and records which constitute property of the Debtor and its subsidiary, obtain the legal files from multiple sets of lawyers who have asserted to be the Debtor or its subsidiary's counsel, conduct Rule 2004 Examinations of a number of persons and entities who have knowledge of the Debtor and its subsidiary's assets and operations, not only as of the Petition Date but previous thereto, to assess the litigation and appellate

rights of the Debtor and its subsidiary in state trial, state appellate, federal district, and federal appellate cases, all of which are pending.

18. The Trustee has had to approach the seemingly insurmountable task of handling this tremendous workload with little cooperation from the individuals and entities, along with their counsel, who hold the very information the Trustee needs to proceed with her statutory duties.

19. The Trustee's challenges should also be viewed against the reality that, according to an FAS representative's recent 2004 Examination testimony, FAS is paying various sets of lawyers more than $500,000 per month just in connection with the instant bankruptcy case, related litigation, oppositions, and discovery.

20. As this Court is also well aware, until recently, various lawyers and law firms had asserted they held and controlled the right to direct the conduct and litigation of THMI, a dispute that has now been resolved by this Court.

21. Needless to say, the Trustee's challenges have been substantial although she is beginning to appreciate the magnitude of the Estate's assets, pre- and post-petition fraud and various avenues of recovery

***Newly Filed Litigation Against the Trustee's Counsel and THMI***

22. As part of her duties, the Trustee sought to take, pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure, the examinations of a number of third-party entities and individuals and this Court approved the same.

23. To assist with resolving a number of discovery disputes, on July 12, 2012, the Court entered its Omnibus Order Establishing Discovery Procedures and Protocol for the Production of Documents and the Examination of Witnesses (Bankr. Doc. 216) (the “Omnibus Order”). In the Omnibus Order, the Court established the scope of the Trustee’s Rule 2004 discovery to include (i) the Debtor’s assets, liabilities, and business; (ii) control of the Debtor’s assets and operations; (iii) potential Chapter 5 causes of action; (iv) the interrelationship with other business entities; and (iv) the potential need to include other business entities or assets in the Debtor’s bankruptcy estate.

24. Since the Petition Date, and even after entry of the Omnibus Order, the Defendants, in concert with the Debtor and other interested parties, have undertaken a concerted effort to undermine the Trustee’s administration of this case with the sole purpose of reducing the potential exposure of third parties, including FLTCH and FAS, who were clearly involved in the fraudulent efforts to place the Debtor and THMI’s, exceeding more than $700 Million in value, beyond the reach of creditors, either through various avoidable transfers or by and through a fraudulent creation of a purportedly separate entity to house THMI’s assets and operations to the detriment of its (and the Debtor’s) creditors.

25. Much of the oral 2004 discovery to date, notwithstanding substantial failures in document production, reflects the existence of claims against various parties, including the Defendants in the instant proceeding.

26. In furtherance of the Defendants oppositional goals, on November 15, 2012, FLTCH and FAS filed a Complaint against THMI in the United States District

Court for the Southern District of New York (the "New York Action"). A true and correct copy of the Complaint (without voluminous exhibits) in the New York Action is attached as **Exhibit 1.**

27. In the New York Action, FLTCH and FAS sued THMI for (i) a declaratory judgment that any action that could be asserted against them or their affiliates based upon fraud, fraudulent transfers, successor liability, and lack of consideration, was barred by the statute of limitations, and (ii) for repayment of a purported loan to THMI for which $89,839.19 remains unpaid.

28. In their complaint in the New York Action, FLTCH and FAS state "THMI and/or those attempting to claim on its behalf or through it, have asserted claims that the transactions set forth in [certain Stock Purchase Agreements] were unfair and/or resulted in a fraudulent transfer of Defendant THMI's assets to the Plaintiffs." (Ex. 1, ¶ 37).

29. Purposely ignored by FLTCH and FAS is that the party investigating the nature of the transactions between the Debtor, THMI, FLTCH, FAS, and others is the Trustee in this Court pursuant to the very discovery plan and procedures that were heavily litigated in this Court.

30. Yet, the Trustee is not a defendant in the New York Action even though in its Show Cause Opinion this Court found that, as THMI's sole shareholder, the Trustee was the real party in interest in control of THMI.

31. By filing the New York Action, FLTCH and FAS have impermissibly sought relief from a foreign forum as a strategic move to avoid consideration and

resolution by this Court of the very issues the Trustee is statutorily obligated to investigate, which investigation has been authorized by this Court.

32. Before the Trustee can even view the documents which were supposed to be produced by the Defendants to the instant proceeding, none of which have been produced, FAS and FLTCH filed the New York Action to pre-emptively litigate the very claims to which the 2004 discovery is directed.

33. Also in furtherance of the Defendants' effort, and those acting in concert with them to obfuscate the issues and avoid liability, on November 21, 2012, shortly after this Court cautioned Zack's counsel against pursuing various requests for sanctions against lawyers and other parties, Zack filed a Complaint against Shumaker, the Court-authorized special counsel for the Trustee, in the United States District Court for the Southern District of Ohio (the "Ohio Action"). A true and correct copy of the Complaint (without voluminous exhibits) in the Ohio Action is attached as **Exhibit 2.**

34. In the Ohio Action, Zack sued Shumaker alleging that its actions in representing the Trustee in this case constituted an abuse of process.

35. Zack filed and served the Ohio Action just days after this Court's November 16, 2012 hearing wherein this Court denied Zack's Motion for Sanctions (Bankr. Doc. 324) and suggested that all parties would be well served focusing on the merits of the bankruptcy case and avoiding some lawyers' predilection toward personal attacks and reflexive assertions of rights to sanctions.

36. Once again, the Trustee was not sued in the Ohio Action, just her court-appointed counsel.

37. The Trustee has had to engage counsel and is obligated to pay a fee for the services required to bring this proceeding.

**COUNT I**
**Temporary and Permanent Injunction Against Zack**

38. The Trustee realleges the foregoing paragraphs 1 through 37 as if fully set forth herein.

39. This is an action for preliminary and permanent injunction against Zack pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure and Rule 65 of the Federal Rules of Civil Procedure.

40. A party must obtain leave of the bankruptcy court before initiating an action in another court when that action is against the trustee or her attorneys for acts taken in their official capacity. *Carter v. Rodgers*, 220 F.3d 1249, 1252 (11th Cir. 2000) (citing *Barton v. Barbour*, 104 U.S. 126, 127 (1881)).

41. The *Barton* doctrine extends to agents of the trustee, including a trustee's attorneys, who are "the functional equivalent of a trustee, where ... they act at the direction of the trustee and for the purpose of administering the estate or protecting its assets." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1241 (6th Cir. 1993); *see also Carter*, 220 F.3d at 1252.

42. Zack did not obtain the permission of this Court before she filed her complaint in the Ohio Action against Shumaker.

43. The acts about which Zack complains in her complaint in the Ohio Action—investigation of potential causes of action of the Estate and prosecution of such

causes of action—fall squarely and solely within the Trustee's (and her Court-approved counsel's) official capacity. *See* 11 U .S.C. § 704.

44. Similarly, the allegations of the Ohio Action seek to collaterally attack the Rule 2004 discovery already authorized by this Court.

45. By filing the Complaint in the Ohio Action, Zack violated the *Barton* doctrine, and should be enjoined from litigating the Ohio Action.

46. By filing the Complaint in the Ohio Action, Zack has also violated the automatic stay, in contempt of this Court. *See, e.g., Allard v. Weitzman (In re DeLorean Motor Co.)*, 991 F.2d 1236, 1241 (6th Cir. 1993); *Baptist Medical Center of New York v. Singh (In re Baptist Medical Center of New York),* 80 B.R. 637, 644 (Bankr. E.D. N.Y. 1987); and *In re Atlas,* 183 B.R. 798, 981 (Bankr. S.D. Fla. 1995).

47. As was reflected in *In re Lickman***,** 297 B.R. 162 (Bankr. M.D.Fla. 2003), a trustee may seek injunctive relief to preclude and prohibit further violations of the *Barton* doctrine.

48. This Court may enter an injunction pursuant to Section 105(a) of the Bankruptcy Code upon a showing that the enjoined action would "impede, impair or irreparably interfere with the administration of the estate." *Id.* at 205, citing *Baptist Medical Center of New York v. Singh (Baptist Medical Center of New York),* 80 B.R. 637, 644 (Bankr. E.D.N.Y. 1987).

49. In fact, "Section 105(a) contemplates injunctive relief in precisely those instances where parties are 'pursuing actions pending in other courts that threaten the

integrity of a bankrupt's estate.' " *Id.*, quoting *Manville Corp. v. Equity Security Holders Committee (In re Johns–Manville Corp.),* 801 F.2d 60, 63 (2d Cir.1986).

50. The *Barton* doctrine precludes *anyone* from suing the Trustee or her counsel without this Court's permission, and it is indisputable that Zack did not obtain such permission before filing the Ohio Action. Therefore, the Trustee will succeed on the merits of this complaint.

51. The Trustee will suffer irreparable harm if Zack is not enjoined from litigating the Ohio Action. Undeterred by denial of sanctions against the Trustee's counsel in this Court and this Court's corresponding warning not to pursue attacks on counsel lightly, Zack continues to attack the Trustee's counsel in a distant forum at great expenses to the Trustee, the cost of which will be borne by the creditors in the Debtor's bankruptcy case. The Trustee neither has the time or geographic resources to address Zack's baseless allegations.

52. Zack's actions further threaten to impede, impair, and irreparably interfere with administration of the Estate.

53. The threatened injury to the Trustee if the injunction is not issued outweighs any damage the injunction may cause Zack. If the Court does not enjoin Zack from litigating in the Ohio Action, the Trustee would be required to defend Zack's specious allegations at the estate's expense. Conversely, there would be no harm to Zack if the injunction is issued because she "cannot be harmed by a prohibition from doing that which [she is] not permitted to do in the first place." *Henkel v. Lickman (In re Lickman)*, 286 B.R. 821, 831 (Bankr. M.D. Fla. 2002).

54. Remedies available at law, such as monetary damages, are inadequate to compensate the threatened injury to the Trustee.

55. Considering the balance of hardships between the Trustee and Zack, a remedy in equity is warranted.

56. The issuance of the injunction against Zack would be in the public interest. Courts have found that requiring litigants to seek permission from the bankruptcy court before commencing an action against the bankruptcy trustee lessens the potential burdens of serving as a trustee and allows the bankruptcy court to monitor a trustee's work.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment (i) enjoining Zack and her counsel from prosecuting the Ohio Action; (ii) awarding the Trustee her attorney fees against Zack for initiating the Ohio Action unquestionably in violation of the *Barton* Doctrine; (iii) finding Zack in contempt for violating the automatic stay; and (iv) granting such other relief as is just and proper under § 105(a).

**COUNT II**
**Temporary and Permanent Injunction Against FLTCH and FAS**

57. The Trustee realleges the foregoing paragraphs 1 through 37 as if fully set forth herein.

58. This is an action for preliminary and permanent injunction against FLTCH and FAS pursuant to Rule 7065 of the Federal Rules of Bankruptcy Procedure and Rule 65 of the Federal Rules of Civil Procedure.

59. The New York Action seeks a declaration on the very issues being investigated by the Trustee.

60. Ironically, much of the delay and obfuscation in the Defenants' failure to turn over previously approved Rule 2004 discovery is now revealed in great detail in the New York Action. Had the Defendants simply turned over to the Trustee the discovery asserted to now support the New York Action, the Trustee would now likely be in a position to bring claims against FAS and FLTCH and others in this Court for much the same claims asserted in the New York Action.

61. Whether FAS and FLTCH received fraudulent transfers of THMI's assets or they are the alter ego or mere continuation of THMI's prior business is squarely the subject of the Rule 2004 discovery which has been ongoing now for ten (10) months. In fact, much of the written discovery requested has been withheld on grounds of privilege.

62. The oral discovery conducted to date has revealed quite an interesting picture of a bust-out of corporate assets, opportunities, and ownership, oftentimes without the new owner even realizing they had just inherited a substantial business, and always under a leveraged transaction with no cash contributions by "new equity."

63. When the 2004 discovery is completely provided and all of the examinations are concluded, the full extent of the Defendants' (along with other parties') fraud will be revealed.

64. For now, the Trustee, being guided by her counsel and strategic advisor, is trying to conclude all pending 2004 discovery, wade through the documents produced, compel production of documents to which improper claims of privilege have been asserted, and handle the pending state court litigation and pending appeals with as little

opposition by the lawyers who claim they represented THMI or the Debtor outside of this Court.

65. The Trustee neither has the time nor the geographic resources to address FAS and FLTCH's attempted pre-emptive strike to determine that they did not receive a fraudulent transfer and they are not the alter ego of the very business that used to operate in the very same location, with the same employees, same management, same skilled nursing facility management relationships, same financial records, same business records, and same computer systems, among other attributes.

66. There will be time for that litigation, in this Court, when FAS and FLTCH, and those acting in concert, completely comply with their Rule 2004 testimonial and document production obligations.

67. The Trustee will succeed on the merits of this Complaint.

68. The Trustee will suffer irreparable harm if FAS and FLTCH are not enjoined from litigating the New York Action because legal determinations may be made that impact estate property and could potentially have the effect of constituting collateral estoppel, harming the Trustee's ability to prosecute.

69. The Trustee will suffer further irreparable harm because the Trustee will be required to incur additional expense in retaining New York counsel to defend THMI and potentially to intervene to protect the bankruptcy estate's rights, the cost of which will be borne by the creditors in the Debtor's bankruptcy case.

70. The Trustee already has to face more than $500,000.00 of monthly litigation efforts from the Defendants, and those acting at their direction. She should not be subjected to litigation in an out of state forum as well.

71. FAS and FLTCH's actions threaten to impede, impair, and irreparably interfere with administration of the Estate.

72. The threatened injury to the Trustee if the injunction is not issued outweighs any damage the injunction may cause FAS and FLTCH. If allowed to proceed, the only purpose of the New York Action is to obtain a strategic advantage in a distant forum over the estate and its creditors on behalf of whom the Trustee must investigate claims.

73. Conversely, there would be no harm to FAS and FLTCH if the injunction is issued because both parties have already made appearances in this Court, subjected themselves to the jurisdiction of this Court, and can continue their vociferous litigation in this Court of any of the issues raised in the New York Action.

74. Remedies available at law, such as monetary damages, are inadequate to compensate the threatened injury to the Trustee.

75. Considering the balance of hardships between the Trustee, FAS and FLTCH, a remedy in equity is warranted.

76. The issuance of the injunction against FAS and FLTCH would be in the public interest. It is the best interests of the Estate and the Debtor's creditors, as well as the principles embodied in the bankruptcy code, that FLTCH and FAS be enjoined from litigating in forums other than this Court regarding issues involving THMI.

WHEREFORE, the Trustee respectfully requests that the Court enter a judgment (i) enjoining FAS and FLTCH from prosecuting the New York Action; (ii) awarding the Trustee her attorneys' fees as sanctions against FAS and FLTCH for initiating the New York Action in bad faith; and (iii) granting such other relief as is just and proper under 11 U.S.C. § 105(a).

**Dated: December 27, 2012**

**SHUMAKER, LOOP & KENDRICK, LLP**

By: /s/ Steven M. Berman

**Steven M. Berman, Esq.**
Florida Bar No. 856290
**Seth P. Traub, Esq.**
Florida Bar No. 022088
101 E. Kennedy Blvd., Ste. 2800
Tampa, Florida 33602
Phone: (813) 229-7600;
Fax: (813) 229-1660
*Counsel for the Trustee*