UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:                                          Case No. 8:11-bk-22258-MGW
                                                Chapter 7
Fundamental Long Term Care, Inc.,

        Debtor.
_____/

Beth Ann Scharrer,                              Adv. No. 12-ap-01198-MGW
as Chapter 7 Trustee,

        Plaintiff,

v.

Fundamental Long Term Care
Holdings, LLC; Fundamental
Administrative Services, LLC; and
Christine Zack;

        Defendants.
_____/

## MEMORANDUM OPINION ON PROPER FORUM FOR FRAUDULENT TRANSFER AND ALTER EGO CLAIMS

This Court recently enjoined Fundamental Long Term Care Holdings and Fundamental Administrative Services from pursuing a lawsuit they filed in federal court in New York seeking a declaration that they are not liable under any fraudulent transfer or alter ego theories for judgments entered against the Debtor's wholly owned subsidiary—Trans Health Management, Inc. ("THMI"). Those fraudulent transfer and alter ego claims may belong to this estate if the Trustee can establish that the Debtor and THMI should be treated as the same entity. So the Court concluded any attempt to preempt those claims interferes with the Trustee's administration of this estate.

In the meantime, the District Court recently remanded an appeal to this Court to determine whether the Debtor and THMI should be treated as the same entity under any legal or equitable theory. The Court has also learned that creditors of this estate are pursuing fraudulent transfer and alter ego claims against the Fundamental entities (and others) in state-court proceedings supplementary. In light of all of that, the Court must now decide whether to allow the Fundamental entities to re-file their declaratory judgment action with this Court and require the creditors to litigate the fraudulent transfer and alter ego claims as part of that proceeding.

Bankruptcy Code § 541—as well as 28 U.S.C. § 1334—gives this Court exclusive jurisdiction over property of the estate. In the state-court proceedings supplementary, the creditors have acknowledged that the assets they are seeking to recover under a fraudulent transfer theory belong to THMI. For that reason alone, the Court believes it is appropriate to enjoin the state-court proceedings supplementary and require all the parties to litigate the fraudulent transfer and alter ego claims here.

But even if those assets were not property of the estate, the result would be the same for two reasons: First, continuation of the state-court proceedings supplementary unnecessarily interferes with the Trustee's administration of this estate because the claims being pursued by the creditors are virtually identical to the claims belonging to this estate. As a consequence, the proceedings supplementary could lead to inconsistent results in two different cases. Second, the District Court has now ordered this Court to determine whether the Debtor and THMI should be treated as the same entity. That determination is, in effect, a condition precedent to any fraudulent or alter ego claims the Trustee may assert in this case. Accordingly, this Court will require all of the parties—the Trustee, the creditors, and the "targets" of any fraudulent transfer or alter ego claims—to litigate those claims in one proceeding before this Court.

2

## Background

The Court is no stranger to the facts of this case. As set forth in more detail in the Court's previous rulings, the Debtor acquired THMI from Trans Health, Inc. ("THI") in 2006 as part of a stock purchase agreement.[1] At the time, THI and THMI were defendants in three wrongful death cases.[2] Since then, three more have been filed against THI and THMI.[3] The Debtor was ultimately forced into bankruptcy involuntarily after being held liable in state-court proceedings supplementary for a $110 million judgment in one of the cases.[4] Since this involuntary case was filed, it has been, perhaps like many (or most) others, proceeding along two tracks.

One of those tracks is claims administration. The claims administration in this case has centered on THMI's liability in the state court wrongful death cases because the Debtor's liability for any claim is derivative of THMI's liability. So there was initially a struggle over who had the right to control THMI's defense in the wrongful death cases.[5] The Debtor (and others) were fearful the Trustee would, if given control over THMI's defense, simply throw in the towel, resulting in significant claims against the estate. After the Court ruled that the Trustee had the

---

[1] A more complete history of this case can be found in the Court's previous rulings: *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321 (Bankr. M.D. Fla. Oct. 9, 2012); *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451 (Bankr. M.D. Fla. 2013); *In re Fundamental Long Term Care, Inc.*, 492 B.R. 571 (Bankr. M.D. Fla. 2013); *In re Fundamental Long Term Care, Inc.*, 493 B.R. 620 (Bankr. M.D. Fla. 2013); *Scharrer v. THI Holdings, LLC (In re Fundamental Long Term Care, Inc.)*, 494 B.R. 548 (Bankr. M.D. Fla. 2013); *In re Fundamental Long Term Care, Inc.*, 2013 WL 3156523 (Bankr. M.D. Fla. Jun. 21, 2013).

[2] Two years before the stock purchase agreement, the first of six wrongful death claims—*Estate of Jackson*—was filed. Two more cases—*Estate of Nunziata* and *Estate of Jones*—were filed just months (or, in the case of *Jones*, days) before the stock purchase agreement.

[3] Two of the cases—*Estate of Webb* and *Estate of Sasser*—were filed just months after the stock purchase agreement. And the last case—*Estate of Townsend*—was filed in 2009. THI and THMI were co-defendants in all but the *Nunziata* case (just THMI was a defendant in that case).

[4] The Estate of Jackson obtained a $110 million judgment against THI and THMI on July 22, 2010. The Estate of Jackson then initiated proceedings supplementary and obtained a $110 million judgment against the Debtor and others on September 13, 2011. Almost three months later, this involuntary case was filed.

[5] The facts and circumstances of that dispute are set forth in detail in the Court's ruling at *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321 (Bankr. M.D. Fla. Oct. 9, 2012).

right to control THMI,[6] there was a dispute over whether she should have access to THMI's litigation files from the wrongful death cases.[7] More recently, the Court has spent considerable time determining whether the judgment against the Debtor, which ultimately led to this involuntary case, was procured by fraud and whether a settlement of three wrongful death actions currently pending against THMI in state court (as well as a settlement with a third party) was fair and reasonable and in the best interests of the creditors.[8] It is this claims administration track of the case that has received much of the Court's attention.

Meanwhile, this case has been simultaneously proceeding (albeit somewhat quietly) down a second track: asset recovery. From the outset of this case, the Trustee—consistent with her duty under Bankruptcy Code § 704—has been concerned with recovering assets sufficient to pay any claims against the estate. Early on, after the order for relief was entered in this case, the Trustee began seeking the Debtor's books and records, as well as those belonging to THMI, in an effort to identify the Debtor's assets (including potential causes of action on behalf of the estate).[9] The Trustee also sought to take the Rule 2004 examination of a number of entities and individuals—such as the Fundamental entities, Murray Forman, Leonard Grunstein, and Rubin Schron—who have consistently been referred to throughout these proceedings (by all concerned)

---

[6] *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321, at *7-8.

[7] The dispute over the Trustee's right to THMI's litigation files is set forth in extensive detail in the Court's ruling at *In re Fundamental Long Term Care, Inc.*, 489 B.R. 451 (Bankr. M.D. Fla. 2013).

[8] For a detailed discussion of the Court's ruling on the claim objection and the Trustee's motion to compromise with a third party (Kristi Anderson), see the Court's rulings at *In re Fundamental Long Term Care, Inc.*, 2013 WL 3156523 (Bankr. M.D. Fla. Jun. 21, 2013) and *In re Fundamental Long Term Care, Inc.*, 492 B.R. 571 (Bankr. M.D. Fla. 2013). The Court's ruling on the Trustee's motion compromise the wrongful death claims was announced on the record at the conclusion of the final evidentiary hearing on that motion. Doc. No. 1037.

[9] Doc. No. 14; Doc. No. 23; Doc. No. 31 at 4–5; Doc. No. 105 at 6-8, Doc. No. 140.

as "targets" of fraudulent transfer and alter ego claims by the Trustee.[10] Those efforts ultimately

resulted in an omnibus discovery order that gave the Trustee the right to conduct discovery

regarding (i) the Debtor's assets and liabilities; (ii) control of the Debtor's assets and operations;

(iii) potential avoidance actions; and (iv) the possibility of including other business entities or

assets in the Debtor's bankruptcy estate.[11]

      Where the Trustee is headed with that discovery is really no secret to anyone involved in

this case: the Trustee intends on pursuing the "targets" to recover hundreds of millions of dollars

(if not more than a billion dollars) that she believes belongs to the Debtor's chapter 7 estate. In

fact, the Trustee has openly stated what her goal is.[12] And she has openly stated the means for

accomplishing that goal—namely, potential alter ego and fraudulent transfer claims against the

"targets."[13] Aside from the fact that some of the discovery issues this Court has been dealing

with relate to the asset-recovery track, the asset-recovery track had not received much attention

from this Court until the end of last year.

      That was when two of the targets (the Fundamental entities) decided to—in their own

words—"get a little proactive"[14] and bring a claim against THMI in federal district court in New

York seeking a declaration that they were not liable for any alter ego or fraudulent transfer

---

[10] Doc. Nos. 42–52. The Court will refer to those parties as the "targets" for ease of reference. No inference, of course, should be drawn from the Court's use of that term.

[11] Doc. No. 216.

[12] For instance, in her motion to repay a post-petition loan by Wilkes & McHugh, $910.55 of which was used to pay for service-related expenses in this case, the Trustee stated it was her "mission to identify, secure and recover hundreds of millions of (if not more than one billion) dollars in assets, not to mention a tremendous amount of fiduciary, professional liability, fraud and avoidable transfer claims, which properly belong to the Chapter 7 Estate." Doc. No. 544 at ¶ 4.

[13] *See id.*

[14] Adv. Doc. No. 18 at 38. References to the record in this adversary proceeding will be cited as "Adv. Doc. No. __." References to filings in the main bankruptcy case will be cited as "Doc. No. __."

claims or, in the alternative, that any statutes of limitations for those claims had expired.[15] The

Trustee immediately sought to enjoin the Fundamental entities from prosecuting that action.[16]

According to the Trustee, the Fundamental entities' declaratory judgment action impermissibly

interfered with the Trustee's administration of this bankruptcy estate.[17]

Implicit—if not explicit—in that argument was the fact that the alter ego and fraudulent

transfer claims that were the subject of the declaratory judgment action were property of the

estate.[18] And the Trustee believed those claims were amply supported by the Rule 2004

testimony she had elicited before the declaratory judgment action was filed.[19] For those reasons,

the Trustee claimed in her motion for injunctive relief that the New York declaratory judgment

action was nothing more than a strategic move to keep this Court from considering and resolving

the very issues the Trustee is obligated to investigate (i.e., the fraudulent transfer and alter ego

claims).[20]

This Court ultimately granted the Trustee's request for injunctive relief and enjoined the

Fundamental entities from pursuing their declaratory judgment action.[21] In doing so, the Court

agreed with the Trustee that the declaratory judgment action appeared on its face to be an effort

---

[15] A copy of that lawsuit is attached as an exhibit to the complaint for injunctive relief the Trustee filed in this proceeding. Adv. Doc. No. 1-1.

[16] Adv. Doc. Nos. 1 & 3.

[17] Adv. Doc. No. 3 at ¶ 34.

[18] Adv. Doc. No. 3 at ¶ 39. In her motion for injunctive relief, the Trustee alleges that she would suffer irreparable harm if the Court did not enjoin the New York declaratory judgment action because "legal determinations may be made that impact estate property and could potentially have the effect of constituting collateral estoppel, harming the Trustee's ability to prosecute." *Id.*

[19] Adv. Doc. No. 3 at ¶¶ 14 & 34.

[20] *Id.* at ¶ 41.

[21] Adv. Doc. No. 20.

to get a separate ruling—in a different forum—with respect to causes of action that might belong to the Trustee in this case.[22] In the Court's view, the Fundamental entities' attempt to "get a little proactive" interfered with the administration of the estate since this Court has exclusive jurisdiction over all property of the estate.[23]

At the conclusion of the hearing, however, the Fundamental entities raised an interesting issue: should Wilkes & McHugh, which represents the plaintiffs in the six wrongful death cases, be allowed to continue pursuing state-court proceedings supplementary in light of the Court's injunction?[24] It turns out—largely unbeknownst to this Court—that Wilkes & McHugh had been pursuing fraudulent transfer and alter ego (or similar) claims in state-court proceedings supplementary while this bankruptcy case was pending. While the Court noted that it hoped someone would raise that issue, it could not rule on the issue since it was not technically before the Court.[25]

Well, that issue has now been properly raised by the Fundamental entities, mostly because of what has transpired since the January 2013 injunction hearing in this proceeding. After this Court approved a compromise between the Trustee (on behalf of THMI) and the Estates of Townsend, Sasser, and Jones resolving the three pending wrongful death cases,[26] the Estate of Townsend proceeded to trial on its wrongful death claim against THI only. Under the terms of the parties' settlement, the Estate of Townsend would have an allowed claim against the Debtor in this case based on a percentage of any jury verdict entered against THI in the state

---

[22] Adv. Doc. No. 18 at 44-49.

[23] *Id.*

[24] *Id.* at 49.

[25] *Id.*

[26] Doc. Nos. 1039 & 1080.

court case.[27] The jury in the state court case ultimately returned a $1.1 billion judgment against THMI.[28]

After the jury returned its $1.1 billion verdict, the Estate of Townsend filed an ex parte motion in the state court case to add various parties—really the "targets" that have been identified in this case—to the final judgment.[29] The basis of that request was that the "targets" were the real parties-in-interest by virtue of a January 5, 2012 settlement agreement that allegedly gave the "targets" control over the *Townsend* litigation.[30] The state court, without conducting a hearing, granted the motion and added the "targets" to the judgment, making them now liable for $1.1 billion in damages.[31]

That led the Fundamental entities to file two motions that have brought this second track of the case to the forefront: First, the Fundamental entities moved for permission to transfer or re-file their New York declaratory judgment action with this Court.[32] Second, and perhaps more important, the Fundamental entities have asked the Court to reconsider a previous order denying their motion to dismiss this injunction proceeding.[33] In their motion to dismiss, the Fundamental entities had argued this proceeding should be dismissed because not all of the necessary parties—specifically the creditors—had been joined to this proceeding. In their current motions,

---

[27] Doc. No. 1072-1.

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] Doc. Nos. 1068 & 1072.

[33] Adv. Doc. No. 57.

the gist of the Fundamental entities' argument is that either the alter ego and fraudulent transfer claims are property of the estate or they are not.

If the claims are not property of the estate, then the Fundamental entities say they should have been permitted to proceed with their declaratory judgment action in New York. And the Trustee's injunction proceeding should be dismissed. If the claims are property of the estate, then the Fundamental entities say the creditors should not be permitted to continue attempting to recover from the "targets" through proceedings supplementary in state court since the creditors' efforts to recover from the "targets" interfere with the administration of this estate as much as the Fundamental entities' declaratory judgment action does.[34]

For her part, the Trustee says she has not been concerned with the creditors pursuing the proceedings supplementary because they are attempting to collect on their judgment against THI—not THMI.[35] So, as the Trustee sees it, the creditors are not interfering with property of the estate. The creditors echo that argument.[36] Plus, they say there is no harm to the estate since they will not recover a penny in their proceedings supplementary without the Court's approval or the Trustee's consent.[37]

After an August 20, 2013 hearing on the motions filed by the Fundamental entities, which the Court took under advisement, the District Court remanded an appeal back to this Court to determine whether the Debtor and THMI should be treated as the same entity.[38] In that appeal, the Fundamental entities had challenged an order denying their motion to disqualify Shumaker,

---

[34] Adv. Doc. No. 62 at 21-22.

[35] *Id.* at 31-32.

[36] *Id.* at 33-35.

[37] *Id.*

[38] Doc. No. 1123 at 2-3.

Loop & Kendrick from representing both the Trustee in this bankruptcy case and THMI in the wrongful death cases. The district court, in its remand order, noted that the creditors have been allowed to pursue THMI or its assets because they put its parent company—the Debtor—into bankruptcy rather than THMI itself.[39] If the Debtor and THMI should be treated as the same entity, then THMI should be brought into bankruptcy, and the issues in that appeal would be moot.[40] Accordingly, this Court must now decide whether to require all the parties—the Trustee, the "targets," and the creditors—to litigate the fraudulent transfer or alter ego claims before this Court.

### Conclusions of Law[41]

The resolution of that issue turns on two questions: First, should the Fundamental entities be allowed to file their declaratory judgment action before this Court? Second, does the Court have the authority to compel the creditors to litigate the fraudulent transfer or alter ego claims before this Court? The answer to the first question—i.e., whether the Fundamental entities should be allowed to bring their declaratory judgment action in this Court—is a relatively easy one.

Notably, the Trustee's primary concern in seeking to enjoin the declaratory judgment action in the first place was that the Fundamental entities were, in the Trustee's view, attempting to prevent this Court from considering and resolving the very issues she was statutorily obligated to investigate.[42] It does not appear that she objected at that time to the Fundamental entities

---

[39] *Id.* at 2.

[40] *Id.*

[41] The Court has jurisdiction over this contested matter and adversary proceeding under section 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

[42] Adv. Doc. No. 3 at ¶ 20.

seeking a similar declaration from this Court. Now, however, the Trustee contends that the Fundamental entities do not, in essence, have constitutional standing to bring their declaratory judgment action.

According to the Trustee, the declaratory judgment action is really nothing more than an affirmative defense to any fraudulent transfer or alter ego claims the Trustee may bring.[43] For that reason, the Trustee says no case or controversy exists until she sues the Fundamental entities.[44] And the Trustee says the Fundamental entities should not be allowed to use their motion to force her to bring her claims prematurely. She says she will bring them before the applicable limitations period expires.[45] The Court, however, is not convinced that no case or controversy exists.

To be sure, the Court is aware of case law standing for the proposition that ordinarily no case or controversy exists where a party merely seeks a declaration regarding the viability of a potential affirmative defense.[46] Those cases generally recognize that parties cannot seek to gain a litigation advantage by obtaining an advance ruling on an affirmative defense.[47] Under those cases, the Trustee has a point. But the Eleventh Circuit has expressly recognized that the viability of a potential affirmative defense may give rise to a case or controversy where all of the facts supporting the defense have already occurred, regardless of whether the action is brought by the potential defendant:

---

[43] Adv. Doc. No. 62 at 30.

[44] Id.

[45] It appears from comments by counsel for the Trustee that the Trustee believes the limitations period expires in December 2013. The Court, however, need not decide that issue now.

[46] See, e.g., Jones v. Dallas Neurosurgical & Spine Assocs., 2013 WL 599766, at *2 (D. Ariz. Feb. 14, 2013).

[47] Id.

> There is little difficulty in finding an actual controversy if all of the
> acts that are alleged to create liability already have occurred. The
> court is then merely asked, as in any litigation, to determine the
> legal consequences of past events and it is immaterial that it may
> be the one allegedly liable, rather than the person to whom [he or
> she] would be liable, who asks for the judicial determination. The
> problem is when a declaration is sought on the legal consequences
> of some act that may or may not occur.[48]

While the Court is not prejudging the validity of any declaratory judgment action brought by the Fundamental entities, it is persuaded that, at a minimum, a case or controversy exists. There really is no doubt in the Court's mind that the Trustee will bring her fraudulent transfer and alter ego claims and that the parties are generally aware of the basis of those claims. And the facts giving rise to those claims and any potential affirmative defenses have—at least for the most part—already happened. So the Court would merely be determining the legal consequences of past events; it would not be determining the legal consequences of acts that may not occur. The only remaining objection by the Trustee, then, is that the Fundamental entities should not be permitted to force her to file her claims before the limitations period has expired.

The Court is not concerned about that for three reasons. First, many of the facts giving rise to the Trustee's potential claims were known before this involuntary case was filed. The creditors had filed much of the evidence with the state court during the proceedings supplementary. Second, the Trustee has been investigating these claims for over a year now, and while the Court acknowledges that THI's state court receiver and the "targets" have not necessarily cooperated with the Trustee's investigation, the Trustee did testify in an affidavit over eight months ago that "[d]iscovery to date has revealed fraudulent conduct of third parties— including [the Fundamental entities]—to place the Debtor and THMI's assets beyond the reach

---

[48] *Angora Enters., Inc. v. Condo. Ass'n of Lakeside Village, Inc.*, 796 F.2d 384, 387 (11th Cir. 1986) (quoting 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil 2d*, § 2757 at 585-86 (1983)).

of creditors, either through various avoidable transfers or by and through a fraudulent creation of assertedly separate entities to house the removed assets and operations."[49] Based on that statement, the Trustee appears to have a good-faith basis for bringing the claims, even if she does not yet have all of the evidentiary facts needed to prove them. Third, the limitations period is only three months away. Besides, the Court can address any concerns about the timing of any filing through an appropriate scheduling order.

In the end, the Trustee filed her claim for injunctive relief to prevent the Fundamental entities from circumventing this Court's jurisdiction by having another Court resolve claims belonging to this estate. Allowing the Fundamental entities to file their declaratory judgment action here will accomplish that goal without prejudicing the Trustee. Accordingly, the Court concludes that the Fundamental entities should be permitted to file their declaratory judgment action with this Court.

That leaves for consideration the more difficult issue: should the creditors be enjoined from pursuing their claims in the state-court proceedings supplementary and required to litigate those claims in this Court? Although the issue has now been raised, none of the parties have discussed in any detail the Court's authority to enjoin the creditors from pursuing their state-court proceedings supplementary, except the Trustee has commented that it is her belief that no one can compel the creditors to litigate their claims in bankruptcy court. The Court's authority to do so is derived from Bankruptcy Code § 105.

---

[49] Adv. Doc. 9-1 at ¶ 8.

Section 105 generally grants bankruptcy courts broad powers with respect to the administration of a bankruptcy case. In particular, § 105 authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. That broad power, of course, is not unfettered. By its plain terms, § 105 limits the Court's authority to carrying out the "provisions" of the Bankruptcy Code. As this Court has recognized previously, "whatever equitable powers remain in bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."[50]

Here, an injunction requiring the creditors to litigate the fraudulent transfer and alter ego claims before this Court is necessary to carry out the provisions of 28 U.S.C. § 1334(e) and Bankruptcy Code § 541. Under those statutes, this Court has exclusive jurisdiction over property of the estate, as well as proceedings to determine whether property is, in fact, property of the estate.[51] None of the parties dispute that is the case. Instead, the Trustee and the creditors contend that the proceedings supplementary do not involve property of the estate since the creditors are merely attempting to collect on judgments against a non-debtor—THI.

But that is not entirely true. While it is true that the creditors obtained a judgment only against THI in *Townsend*, where they sought to add the "targets" as the real parties-in-interest to the judgment, what about the *Nunziata* case? Only THMI is a defendant in that case. And there, the Estate of Nunziata initiated proceedings supplementary against Rubin Schron (one of the "targets") and actually obtained a judgment against him in those proceedings supplementary on September 27, 2012—only three months before the Trustee initiated this injunction proceeding

---

[50] *In re Fundamental Long Term Care, Inc.*, 2012 WL 4815321, at *8 n.56 (Bankr. M.D. Fla. Oct. 9, 2012) (citing *Norwest Bank Worthington v. Ahler*, 485 U.S. 197, 206 (1988)).

[51] 28 U.S.C. § 1334(e); 11 U.S.C. § 541; *In re Cox*, 433 B.R. 911, 920 (Bankr. N.D. Ga. 2010).

(and well after this bankruptcy case was filed). So the proceedings supplementary in that case

could only have been an attempt to collect on a judgment against THMI—not THI.

Even more important, during those proceedings supplementary, state-court counsel for

the Estate of Nunziata appeared to concede the assets it was going after were property of the

estate. In those proceedings supplementary, the Estate of Jackson was seeking to hold Schron

liable for the entirety of the $200 million judgment in that case because he was allegedly the

recipient of at least that much in fraudulent transfers. Counsel for the Estate of Nunziata, when

proffering an affidavit to the state court in support of the request for entry of a judgment against

Schron, represented to the state court that the assets Schron received belonged to THMI:

> And [the affiant has] just added here, in sum, really the opinions
> that he's already offered in the trial in the underlying case. And
> that is that there was one -- at least with respect to 2006 that there
> was one joint enterprise. That THI, THI of Baltimore and THMI
> were one joint enterprise and they were alter egos. That they were
> sold for approximately 9.9 million dollars but that the value of the
> enterprise that was sold was exceeding 700 million dollars in
> value. That it was, therefore, less than for reasonable equivalent
> value, which is clearly a badge of fraud and establishes that it's a
> fraudulent conveyance. *Moreover, the valuable assets in that
> transfer were the assets of THMI, and THMI is the subject
> judgment debtor in this particular case*.[52]

The fact that the assets that were allegedly transferred to Schron (which appear to be the

same assets allegedly transferred to the other "targets") belonged to THMI is crucial. If that is

the case, what difference does it make if the creditors are going after those assets in an attempt to

collect on a judgment against THI? How can the Estate of Townsend collect on its judgment

against THI by seeking to undo a transfer of assets that belong to THMI—whether under an alter

ego or fraudulent transfer theory—without interfering with the administration of this estate? In

---

[52] That representation was made during a September 27, 2012 order to show cause hearing in the *Nunziata*
proceedings supplementary. The Fundamental entities attached a copy of the hearing transcript to their motion for
reconsideration in this proceeding. Adv. Doc. No. 57-1 at p. 14, l. 15 – p. 15, l. 3 (emphasis added).

fact, Bankruptcy Code § 362(a)(3) arguably prohibits the creditors from seeking to undo any transfer of assets belonging to THMI in state court.[53] So an injunction is necessary to allow the Court to enforce its exclusive jurisdiction under 28 U.S.C. § 1334 and Bankruptcy Code § 541.

It is also necessary for another reason. The whole analysis that the fraudulent transfer claims may be property of the estate hinges on one fact that sometimes gets overlooked in this case. In order for the Trustee to bring her claim, she will have to demonstrate that the Debtor and THMI should, in essence, be treated as the same entity. That is the very same issue that the District Court ordered this Court to determine as expeditiously as possible. This Court cannot conclusively determine whether the Debtor and THMI should be treated as the same entity if the creditors are litigating similar or related issues in a different forum.

But even if the transferred assets did not belong to THMI and the District Court had not entered its remand order, the Court nevertheless has authority to require the creditors to litigate their fraudulent transfer and alter ego claims before this Court under § 105.[54] Third-party injunctions under § 105 are not limited to only those cases where property of the estate is directly involved. A good example of where a third-party injunction was upheld under § 105 even though property of the estate was not directly involved is the Fourth Circuit Court of Appeals' decision in *In re A.H. Robins Co.*[55]

There, the debtor (A.H. Robins Company) was the manufacturer of the Dalkon Shield intrauterine device. After A.H. Robins filed for bankruptcy, a group of plaintiffs tried to sue Aetna Casualty & Surety Company for injuries caused by the Dalkon Shield. It was alleged that

---

[53] Section 362(a)(3) provides that the filing of a petition stays "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate."

[54] 2 Collier on Bankruptcy ¶ 105.03[1][b] (explaining that "[e]ven if estate property is not involved, section 105 may still have applicability").

[55] *Oberg v. Aetna Casualty & Surety Co. (In re A.H. Robins Co.)*, 828 F.2d 1023 (4th Cir. 1987).

Aetna, who was A.H. Robins' liability insurer, had taken responsibility for monitoring the device and the decision whether to recall it, not to mention concealing certain damaging information. The Fourth Circuit initially upheld a district court order staying the initial claims against Aetna to recover damages under A.H. Robins' liability policy.

In doing so, the court articulated several grounds for the stay. To begin with, the court had concluded that there was such an identity between A.H. Robins and Aetna that a judgment against Aetna would in effect be a judgment against A.H. Robins. So the court concluded the action should have been stayed under § 362(a)(1). The court also concluded that the action should be stayed under § 362(a)(3) because Aetna might seek contribution from A.H. Robins, thereby implicating property of the estate. The final grounds for the stay were equitable: the court reasoned that a stay of the third-party suit was appropriate under § 105 and 28 U.S.C. § 1334 because the lawsuit could subject A.H. Robins' officers, directors, and employees to extensive discovery, which could hamper its reorganization process.

Two more groups of plaintiffs later decided to circumvent the stay by filing a lawsuit that would not directly implicate property of the estate, as the first lawsuit had. To avoid implicating property of the estate, the two groups of plaintiffs (who had filed two separate lawsuits) both agreed to limit their recovery to Aetna's own assets—not A.H. Robins' insurance proceeds. Also, the plaintiffs agreed not to depose any of A.H. Robins' officers, directors, or employees without prior court approval. Even though both groups of plaintiffs had agreed not to pursue A.H. Robins' insurance proceeds or depose its officers, directors, or employees, the Fourth Circuit nevertheless held that a stay of the two new lawsuits was appropriate under § 105.

At the outset, the court noted that the two lawsuits did not pose any threat to property of the estate. As a consequence, the court had to consider other harms that may be caused by allowing the two third-party actions against Aetna to proceed. The court settled on the fact that the lawsuits would burden or hamper A.H. Robins' administration of that case. In particular, while the two groups of plaintiffs had agreed not to depose A.H. Robins' officers, directors, or employees, Aetna was not bound by the same agreement. And the court observed that Aetna would inevitably be forced to involve A.H. Robins since Aetna's defense would be that A.H. Robins was responsible for the plaintiffs' injuries. Because the court concluded that A.H. Robins would inexorably be drawn into the litigation, thereby detracting it from its reorganization efforts, the Court held that a stay of the third-party litigation was warranted under § 105 even though the lawsuits did not directly implicate property of the estate.

Here, allowing the creditors to pursue the fraudulent transfer (or other claims) in the state-court proceedings supplementary would similarly detract from the Trustee's ability to administer this estate. Recall, the primary reason the Trustee sought to enjoin the Fundamental entities' declaratory judgment action in New York—other than its distance from this forum— was that it could lead to inconsistent results. According to the Trustee, the New York declaratory judgment action needed to be stayed because it was a "strategic move to avoid consideration and resolution by this Court of the very issues the Trustee is statutorily obligated to investigate."

How, in any meaningful sense, is that different from the proceedings supplementary the creditors are pursuing in state court? Like the New York declaratory judgment action, the claims being pursued by the creditors in the state-court proceedings supplementary are virtually identical—if not identical—to the claims the Trustee intends on bringing here. Whether the creditors are pursuing those claims in an effort to collect on a judgment against THI does not

change the fact that the evidence needed to prove up the claims is the same as the evidence the Trustee will need to prove in order to prevail on her claims here. So the same danger that another forum will resolve issues the Trustee is statutorily obligated to investigate (i.e., the fraudulent transfer and alter ego claims) exists unless the creditors are enjoined. While the Trustee would not necessarily be collaterally estopped by the state court rulings, allowing the creditors to pursue the fraudulent transfer and alter ego claims in state court creates a very real possibility of inconsistent results.

And is there any doubt that the creditors are pursuing their claims in state court for strategic reasons? As all of the parties seem to acknowledge, the results the creditors have obtained in state court so far are astonishing. They obtained $1.2 billion in judgments in three "empty chair" trials before this case was filed, and they recently obtained a $1.1 billion judgment jury verdict where THI was present—albeit already saddled with a default as to liability. It appears, particularly in light of the creditors' attempts to hold the "targets" liable for the recent $1.1 billion judgment in *Townsend*, that the creditors are attempting to "have their cake and eat it too."

One the one hand, the creditors forced the Debtor into bankruptcy presumably to take advantage of this Court's broad powers—and the Trustee's statutory obligation—to marshal assets of the estate for the benefit of the creditors. THMI—not the Debtor—would have seemingly been the logical choice for putting a company into bankruptcy given its direct liability on the $1.2 billion in pre-petition judgments. On the other hand, not putting THMI into bankruptcy has allowed the creditors to continue with the state court actions. The goal, as the creditors seem to concede in their response to the Fundamental entities' motions, apparently was to give the creditors the opportunity to continue with their state court litigation so long as they

enjoyed the same success they did pre-petition, but the ability to turn to this Court in case they did not:

> It is ultimately up to the Trustee, giving due regard to the wishes of the Creditors, to decide whether the Creditors' litigation, monitored by the Trustee, will most likely result in recoveries, or whether she should also bring additional actions herself in one or more of the many courts available to her.[56]

Ordinarily, there is nothing wrong with parties making strategic decisions. That happens all the time in bankruptcy (and litigation more broadly). But the Court is inclined to agree with the Trustee that strategic attempts to avoid having this Court resolve claims that belong to the estate interfere with the administration of the case—regardless of whether those strategic attempts are by the Fundamental entities or the creditors.

## Conclusion

In asking the Court not to enjoin their efforts in state court, the creditors argue the Court should be guided by the Trustee's judgment as to what is in the best interests of the estate. That is not quite right. The Court is first and foremost guided by the Bankruptcy Code. And the Bankruptcy Code grants this Court exclusive jurisdiction over property of the estate. There is no question in the Court's mind that continuation of the proceedings supplementary—given the Estate of Nunziata's acknowledgement that the assets that were allegedly transferred to the "targets" belong to THMI—is an attempt (even if unintentional) to obtain or take control of property of the estate, and that alone warrants requiring the creditors to pursue any fraudulent transfer or alter ego claims in this Court.

---

[56] Doc. No. 1089 at ¶ 4.

But even if the Court were principally guided by the Trustee's judgment, the result would be the same. The Trustee has acknowledged that any recoveries by the creditors on any judgment against THI judgment should flow to the bankruptcy estate:

> What [the Fundamental entities] are really driving at is a substantive determination by this Court that funds collected by the creditors in their pursuit of claims against THI are property of the estate. It's a 541 declaratory judgment action.
>
> I don't conceptually have a problem with that result because I think it's the best thing for the estate for all the money to flow through to the bankruptcy estate. It's my belief that that's what should happen, it's my belief that's what will happen, but if this Court wants absolute certainty with that issue, the way to tee it up properly, without making sort of an off-the-cuff decision, is to require someone to file a dec. action.
>
> If you want me to file it, I'll file it. If you want the targets to file it, they can file it. But the real question is not whose court should things be litigated in. The real question is whose funds are they? Are they property of the estate or are they non-property of the estate. And that determination requires an adversary proceeding, I believe, and requires the creditors to be joined to that adversary proceeding.[57]

The Court basically agrees with the Trustee. All of these issues needed to be hashed out in one proceeding involving all of the parties. And that proceeding can only take place in this Court since the proceeding involves property of the estate or the question of whether certain property belongs to the estate. Not to mention, the District Court recently remanded an appeal of one of the Court's orders in this bankruptcy case to this Court for a determination of the related issue of whether the Debtor and THMI should be treated as the same entity. Accordingly, the Court will schedule a hearing to consider a scheduling order setting forth the parameters of a single proceeding—involving the Trustee, the creditors, and the "targets"—for resolving any

---

[57] Adv. Doc. No. 62 at 42-43.

fraudulent transfer and alter ego claims. The Court will enter separate orders on the motions

consistent with its rulings in this Memorandum Opinion.

   **DATED** in Chambers at Tampa, Florida, on September 12, 2013 _____.

Michael G. Williamson
United States Bankruptcy Judge

Service Instructions: Greg McCoskey is directed to serve a copy of this memorandum opinion on interested parties and file a proof of service within 3 days of entry of the opinion.

**Steven M. Berman, Esq.**
**Shumaker, Loop & Kendrick, LLP**
Counsel for Beth Ann Scharrer, Chapter 7 Trustee

**Gregory M. McCoskey, Esq.**
**Akerman Senterfitt**
Counsel for Fundamental Administrative Services

**Paul V. Possinger, Esq.**
**Proskauer Rose, LLP**
Counsel for Fundamental Long Term Care Holdings, LLC

**Harley Riedel, Esq.**
**Stichter Riedel Blain & Prosser, P.A.**
Counsel for Petitioning Creditors

**James L. Wilkes, Esq.**
**Isaac R. Ruiz-Carus, Esq.**
Wilkes & McHugh, P.A.
Counsel for Petitioning Creditors